UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

AMEC CONSTRUCTION MANAGEMENT, INC.

VERSUS

FFIC RISK MANAGEMENT

CIVIL ACTION

NO. 13-718-JJB-EWD

**RULING**

This matter is before the Court on cross Motions for Clarification/Reconsideration. On May 12, 2017, this Court granted in part and denied in part the Defendant's, Fireman's Fund Insurance Company's ("FFIC"), Motion for Disqualification of the Plaintiff's law firm, Deutsch Kerrigan, LLP ("Deutsch").[1] Based on extensive briefing and oral argument, the Court held that Deutsch could continue to represent the Plaintiff, AMEC Construction Management Inc. ("AMEC"), but that three Deutsch attorneys could not act as advocates at trial because they were likely to be necessary witnesses.

In light of this Ruling, both parties have submitted Motions to the Court. The Plaintiff brings a Motion for Clarification (Doc. 154) requesting that the Court clarify its Ruling to specify that the three attorneys are only disqualified from acting as advocates at trial and not during pretrial proceedings. The Defendant filed an Opposition to this Motion (Doc. 158).

The Defendant brings a Motion for Reconsideration (Doc. 156). While the Defendant agrees that the three attorney-witnesses should be disqualified, the Defendant asserts that the entire Deutsch firm must be disqualified as well. Plaintiff's firm filed an Opposition to this Motion (Doc. 159), and the Defendant filed a Reply (Doc. 162).

For the reasons that follow, Plaintiff's Motion for Clarification (Doc. 154) is **GRANTED** and Defendant's Motion for Reconsideration (Doc. 156) is **DENIED**.

---

[1] Doc. 148 (filed under seal).

1

## I. THE UNDERLYING CASE

The underlying case here is a basic insurance coverage dispute. The Plaintiff, AMEC, is the successor in interest of Barnard & Burk, Inc., a Louisiana company ("B&B"). In the early 2000s, B&B and AMEC, as the successor in interest, were named as defendants in nearly fifty asbestos lawsuits in Louisiana consisting of hundreds of plaintiffs. B&B was insured by FFIC, the Defendant in this case. AMEC alleges that the agreement between FFIC and B&B obligated FFIC to provide insurance coverage for the asbestos lawsuits—including a duty to defend and a duty to indemnify B&B. AMEC claims that it had to fund its own defense because FFIC would not pay. AMEC hired the law firm Hailey McNamara to defend it in those suits. AMEC now brings suit against FFIC arguing that FFIC failed to uphold its duties under the insurance agreements, and that FFIC must reimburse AMEC for the fees it incurred in defending those suits, including fees AMEC paid to the law firm Hailey McNamara.

Relevant to this Motion, FFIC answered the complaint and asserted 57 affirmative defenses and various counterclaims.[2] It is clear to the Court that the core of this dispute is about whether AMEC is entitled to coverage for indemnity and defense under the FFIC policy. As one alternative argument, FFIC asserted that if coverage for defense is found, it should only be obligated to pay reasonable attorney fees incurred by the Hailey McNamara lawyers in defending the asbestos lawsuits.[3]

## II. PROCEDURAL BACKGROUND

This is the second time this Court has been asked to address disqualification. In its first disqualification Motion, FFIC raised two independent grounds for disqualification of Deutsch. First, FFIC claimed that it was a client of Deutsch in other non-related matters, and therefore

---

[2] Doc. 46.
[3] *Id.* at 12-14.

Deutsch should be disqualified from representing FFIC's adversary, AMEC, in this case. After undertaking an extensive analysis of complicated attorney-client issues, the Court concluded that FFIC is not currently Deutsch's client.

FFIC also raised a separate and independent basis for disqualification. FFIC asserted that Sean Mount ("Mount"), Lauren Brisbi ("Brisbi"), and Anne Medo ("Medo") were likely going to be necessary witnesses at trial. These three lawyers were at Hailey McNamara when they represented AMEC in the underlying asbestos matters and recently moved to Deutsch. FFIC argued that because it raised the reasonableness of these attorneys' fees as an affirmative defense, these individuals would likely need to testify in this trial. FFIC argued that they should be disqualified from acting as both advocates and witnesses to avoid jury confusion at trial. The Court agreed and disqualified these attorneys but did not specify if they were disqualified for both pretrial and trial purposes or just for trial purposes.

In the latter argument, FFIC *focused* on the "general 'advocate-witness' rule" pursuant to which counsel should "avoid appearing as both advocate and witness [at trial] except under extraordinary circumstances."[4] Notably, in FFIC's "advocate-witness" discussion it did not raise the theory that it now raises in its Reconsideration Motion—that no member of Deutsch can reasonably provide independent arm's length counsel to AMEC because the actions and motivations of Deutsch attorneys (Mount, Medo, and Brisbi) are at issue. In fact, in both its original Opposition and at oral argument, Deutsch argued that even if Mount, Medo, and Brisbi had to be disqualified, this did not require disqualification of the entire Deutsch firm. In its original Opposition, Deutsch argued as follows:

---

[4] FFIC's First Motion for Disqualification 11, Doc. 101-1.

3

Even if DK attorneys were needed to testify about matters not excluded from the rule, this would not necessarily result in the disqualification of the entire firm. *Mose* 2011 WL 2790199 at *2 ("Unless an impermissible conflict of interest exists between a testifying lawyer and her client, Model Rule 3.7 ... does not mandate the vicarious disqualification of the lawyer's firm …"); *SAS Overseas Consultants v. Offshore Consultants USA, Ltd.*, CIV. A. 97-3449, 1998 WL 676992, at *5 (E.D. La. Sept. 30, 1998) (disqualifying attorney from advocating at trial because he is a necessary witness, but not entire firm).[5]

Additionally, at oral argument, Deutsch explained that total firm disqualification was unwarranted even if Mount, Medo, and Brisbi had to be disqualified, citing the *SAS Overseas* Case.[6] Significantly, FFIC made no attempt in its Original Reply or at oral argument to rebut the *SAS* case or to raise this newly asserted theory—that Deutsch cannot offer independent arm's-length counsel to AMEC because the conduct of its attorneys is at issue.

While originally it appeared that FFIC's motivation in requesting disqualification was genuine, in that it thought Deutsch was its attorney in other matters, its motivations are now more suspect. FFIC is not seeking disqualification based on its own interests but rather, it is seeking disqualification to protect AMEC (its adversary) even though AMEC itself has waived any potential conflict between its interests and Deutsch's interests.

In instances where one party seeks to disqualify opposing party's counsel based on a conflict between the opposing party and its own counsel, the Fifth Circuit has directed districts courts to proceed with caution: "Where an attorney's testimony may prejudice only his own client, the opposing party should have no say in whether or not the attorney participates in the litigation as both advocate and witness."[7] Although the opposing party may bring a conflict of interest to the Court's attention, "[s]uch an objection should be viewed with caution, however, for it can be

---

[5] Deutsch's Original Opp. 10, Doc. 139.
[6] 3/8/17 Tr. 28-29, Doc. 149.
[7] *FDIC v. US Fire Ins.*, 50 F.3d 1304, 1315 (5th Cir. 1995).

misused as a technique of harassment."[8] Courts should be skeptical of such motions when they suggest "not so much a conscientious professional concern for the profession and the client of the opposing counsel" but rather "a tactic designed to delay and harass."[9] When it appears that a disqualification motion is "[d]riven solely by undue preoccupation with the disqualification issue, prolonged delay in addressing the merits of a case, in and of itself, can do little to instill confidence in the judicial system."[10]

### III. STANDARD FOR RECONSIDERATION

Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to "revise at any time any order or other decision that does not end the action."[11] Under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."[12] While "Rule 59(e), understandably, sets a high threshold for parties to raise a new argument for the first time after judgment has already been entered.... In contrast, Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires."[13] However, reconsideration motions should be the exception not the rule, and a court should only revise its ruling where "the moving party has presented substantial reasons for reconsideration."[14]

---

[8] *Id.* (quoting Model Rule 1.7 comment (1992)).
[9] *Id.*
[10] *Id.* at 1317.
[11] *Austin v. Kroger Texas, L.P.*, Civil Action No. 16-10502, 2017 WL 1379453, at *8 (5th Cir. Apr. 14, 2017) (internal quotation marks omitted).
[12] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990).
[13] *Austin*, 2017 WL 1379453 at *9 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)).
[14] *Broyles v. Cantor Fitzgerald & Co.*, Civil Action No. 10-854, 2015 WL 12911776 at *1 (M.D. La. Feb. 5, 2015) (citation omitted).

## IV. STANDARD FOR DISQUALIFICATION

Motions to disqualify attorneys are generally disfavored and require a high standard of proof so as not to deprive a party of its chosen counsel.[15] The burden of proof is on the party seeking disqualification.[16] In the Fifth Circuit, disqualification motions are governed by state and national ethical standards adopted by the court.[17] District courts within the Fifth Circuit look to their own local rules, the ABA's Model Rules of Professional Conduct, the ABA's Model Code of Professional Responsibility, and the state rules of conduct.[18] Applying these rules, a court must also take into account various social interests, including the right of the party to select its counsel of choice.[19] The rule of disqualification is not to be mechanically applied, and "[a]ll of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights."[20]

## V. LAW & ANALYSIS

The Court must address two issues at this juncture. First, in regards to FFIC's Reconsideration Motion, it must address whether there is an impermissible and non-waivable conflict of interest between Deutsch and AMEC such that the Court should disqualify Deutsch. Second, in regards to AMEC's Clarification Motion, it must address whether disqualification for both pretrial and trial purposes is appropriate.

---

[15] *Mose v. Keybank Nat'l Assoc.*, Civil Action No. 11-162, 2011 WL 2790199, at *2 (M.D. La. July 14, 2011) (citing *FDIC*, 50 F.3d at 1304).
[16] *Babineaux v. Foster*, Civil Action No. 04-1679, 2005 WL 711604, at *2 (E.D. La. Mar. 21, 2005).
[17] *FDIC*, 50 F.3d at 1311-12.
[18] *In re Katrina Canal Breaches*, Civil Action No. 05-4182, 2008 WL 3845228, at *3 (E.D. La. Aug. 13, 2008).
[19] *FDIC*, 50 F.3d at 1314.
[20] *Id.* (citation omitted).

**A. FFIC is Not Entitled to Reconsideration Because It Failed to Raise These Arguments in Its Original Motion, and a True Conflict of Interest Does Not Exist Here.**

The Court shall deny FFIC's Motion for two reasons. First, FFIC is raising completely new arguments in this Motion that it could have and should have raised in its original Motion. A reconsideration motion is not the "proper vehicle by which to present new arguments."[21] A court does not have "*carte blanche* to reconsider newly presented theories" when presented in such a motion.[22] Here, the Court finds that FFIC had two opportunities to raise its argument that no member of Deutsch could reasonably provide independent arm's length counsel to AMEC because the actions and motivations of Deutsch lawyers are at issue in this case. It could have explained this argument in its Reply or in the hearing when Deutsch cited the *SAS Overseas* case, but it failed to do so. Moreover, and perhaps accidentally conceding the weakness in its argument during the hearing, FFIC appeared to admit that the Court would be skeptical of disqualifying Deutsch entirely based on FFIC raising the issue about overbilling: "And I know the Court will be skeptical when I make this statement. We have a serious, serious issue with billing and the way the underlying cases were handled…And I know that the Court will be skeptical so I'm just going to give you some examples."[23]

Alternatively, on the merits, the Court finds that there is no "impermissible conflict of interest" that would require it to disqualify Deutsch entirely. Under Rule 3.7, an individual lawyer should not act as both an advocate and a witness at trial. However, "[u]nless an impermissible conflict of interest exists between a testifying lawyer and her client, Model Rule 3.7…does not mandate the vicarious disqualification of the lawyer's firm."[24] An impermissible conflict exists

---

[21] *Livingston Downs v. Jefferson Downs*, 259 F.Supp.2d 471, 480 (M.D. La. 2002).
[22] *Id.*
[23] 3/8/17 Tr. 17, Doc. 139.
[24] *FDIC*, 50 F.3d at 1313.

where there is a high likelihood that an attorney's testimony will be prejudicial to his client and an attorney's own conduct is at issue thereby making it impossible for her to provide "arm's length counsel."[25] Where an impermissible conflict exists, a client cannot waive that conflict: "[w]hen a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent."[26]

Where a plaintiff's lawyer is likely to be called as a witness at trial, and there is only a remote possibility that his testimony will be adverse to his client, disqualification of the lawyer is appropriate but disqualification of his entire firm is inappropriate: "[T]he remote possibility that [the plaintiff's lawyer] and [the plaintiff] may eventually find themselves at odds is much too tenuous a thread to support the burdensome sanction of law firm disqualification."[27] Two cases help illustrate this proposition.

In *FDIC v. US Fire*, the defendant (US Fire) moved for disqualification of the plaintiff's (FDIC's) law firm, because US Fire intended to call FDIC's attorneys to establish a bad faith defense that allegedly voided the coverage owed by US Fire to FDIC.[28] The underlying dispute between the parties concerned a savings and loan bond.[29] US Fire issued a savings and loan blanket bond to Irving Savings (which was eventually taken over by FDIC) which insured against certain losses that the savings and loan might suffer, including those arising from fraudulent or dishonest conduct of Irving Savings' employees.[30] Under the terms of the bond, Irving Savings was only covered for losses which it reported within 100 days after discovering the dishonesty.[31] FDIC, as

---

[25] *Bellino v. Simon*, Civil Action No. 99-2208, 1999 WL 1277535, *3 (E.D. La. Dec. 28, 1999).
[26] *Id.* at *5 (quoting Model Rule 1.7 comments).
[27] *FDIC*, 50 F.3d at 1314.
[28] *Id.* at 1308.
[29] *Id.* at 1307.
[30] *Id.*
[31] *Id.*

the successor in interest to Irving Savings, sought to recover on this bond issued by US Fire in connection with certain uncollectible loans wrongfully made by Irving Savings' officers.[32] US Fire refused coverage under the bond, arguing that FDIC attorneys deliberately obstructed US Fire's investigation of the claim by withholding documents which caused the 100 day time period for reporting to expire.[33] FDIC opposed this argument, asserting that if its attorneys withheld documents, it was unintentional and did not have the effect of voiding coverage under the bond.[34]

US Fire brought a disqualification motion, arguing that FDIC's attorneys could not represent FDIC in the coverage dispute because they were going to have to testify about when they discovered the alleged dishonesty.[35] While the Fifth Circuit found disqualification of the individual lawyers appropriate based on the advocate-witness rule, it found that disqualification of the lawyers' firm was inappropriate: "Notwithstanding one hypothetical scenario wherein the interests of [FDIC's lawyer] and the FDIC might be characterized as tangentially conflicting, [FDIC's lawyer's] interests are otherwise consistent with those of her client. Just at it is in the interest of US Fire to show comparative bad faith, it is in the interest of both [FDIC's lawyer] and the FDIC to disprove it."[36]

*SAS Overseas Consultants v. Offshore Consultants USA, Ltd.*, stands for the same proposition—where there is no impermissible conflict of interest between a client and its law firm, the firm can continue to represent the client even where one lawyer in that firm is a likely witness.[37] This was a garden-variety contract interpretation case.[38] The defendant intended to call the

---

[32] *Id.* at 1308.
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.* at 1314.
[37] *SAS Overseas Consultants v. Offshore Consultants USA, Ltd.*, Civil Action No. 97-3449, 1998 WL 676992, *4 (E.D. La. Sept. 30, 1998).
[38] *Id.* at *1.

9

plaintiff's lawyer to question him about the drafting of the contract and his client's breach of the confidentiality provision of the contract.[39] The defendant argued that disqualification of the plaintiff's entire firm was appropriate because the lawyer's testimony regarding breach of the contract's confidentiality clause by his client would clearly be detrimental and adverse to his client.[40] While the court disqualified the individual attorney, it refused to disqualify his firm: "[The] defendant has not demonstrated to this Court's satisfaction that [plaintiff's lawyer's] testimony is necessarily prejudicial to his client. However, even if some of [his] testimony could be characterized as adverse to his client, that would not require disqualification of [the entire firm]."[41]

There are a few cases in the Fifth Circuit in which courts have disqualified entire firms. Where a plaintiff's lawyers are likely to be called as witnesses at trial, and it is likely that their testimony will be adverse to the plaintiff's interests, disqualification of the plaintiff's entire firm from all stages of the proceeding is appropriate.[42] For instance, in *Bellino v. Simon*, the plaintiff sold two autographed baseballs to Aubert, an attorney.[43] Aubert attempted to authenticate the baseballs with the defendant, who was a sports collector.[44] During the defendant's conversations with Aubert, the defendant allegedly made defamatory statements about the plaintiffs to Aubert.[45] The plaintiffs then hired Aubert and his firm to represent them in a defamation suit against the defendant.[46] The conduct of Aubert became an issue when, during his deposition, he testified that he had a feeling that the alleged defamatory statements made against his client might be true.[47]

---

[39] *Id.*
[40] *Id.* at *4.
[41] *Id.*
[42] *Bellino*, 1999 WL 1277535 at *1.
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.* at *3.

The court held that Aubert had an impermissible conflict of interest which could not be waived: "If Mr. Aubert said [the defendant's] allegations were true, then he will have a hard time proving they were false in order to support his client's defamation claim."[48] The Court also distinguished the *FDIC* case: "[I]n contrast to *FDIC*, this case involves much more than a 'remote' possibility that Mr. Aubert's testimony will prejudice his client. The record reveals that Mr. Aubert's testimony could undermine or even defeat the falsity and injury elements of [his client's] defamation claim."[49]

After reviewing the cases discussed above, as well as the others cited by FFIC in its Motion, the Court finds that disqualification of the entire Deutsch firm is inappropriate. The allegations at issue in this case are similar to those in *FDIC* because they are based on an unproven defense raised by an insurer in an attempt to avoid coverage. At this juncture, it appears that there is merely a remote possibility that the testimony of Mount, Medo, or Brisbi will prejudice AMEC as these three individuals plan to testify that their fees were reasonable and they did not engage in unreasonable billing practices. Moreover, AMEC has waived any conflict arising out of Deutsch's continued representation.[50]

The present case is clearly distinguishable from *Bellino*. In *Bellino*, it was clear that the attorney's testimony would prejudice his client, whereas here it is merely speculative and highly contested that any conduct or testimony of the Deutsch lawyers is adverse to their client.

Accordingly, the Court **DENIES** FFIC's Motion for Reconsideration because FFIC could have raised this issue in its first motion. Additionally, on the merits, there is no impermissible conflict of interest which calls Deutsch's ability to offer arm's length counsel into question.

---

[48] *Id.*
[49] *Id.* at *4.
[50] Waiver, Doc. 159-1.

11

### B. Mount, Medo, and Brisbi are Disqualified for Trial Purposes and They May Not Take or Defend Depositions, But They May Participate in Other Pretrial Matters.

AMEC brings a Motion for Clarification requesting that the Court clarify that it meant to disqualify Mount, Medo, and Brisbi solely for trial purposes and not for pretrial purposes. The Court finds that clarification is appropriate in this case.

"In most jurisdictions, a lawyer who is likely to be a necessary witness may still represent a client in the pretrial stage."[51] "[Louisiana Rule of Professional Conduct] 3.7 and Model Rule 3.7 state plainly that the prohibition to a lawyer acting as an advocate is limited to those circumstances where the lawyer is likely to be a 'necessary witness' 'at a trial' and it does not apply to pretrial proceedings."[52] "One purpose of the necessary witness rule is to avoid the possible confusion which might result from the jury observing a lawyer act in dual capacities—as witness and advocate. The jury is usually not privy to pretrial proceedings, however, so the rule does not normally disqualify the lawyer from performing pretrial activities; the one exception is when the pretrial activity includes obtaining evidence which, if admitted at trial, would reveal the attorney's dual role."[53]

Here, the Court finds that in order to uphold the spirit of Rule 3.7—which is to avoid the prejudice associated with jury confusion resulting from an attorney acting as both an advocate and a witness at trial—the Court must disqualify Mount, Medo, and Brisbi from taking and defending any depositions in this matter.[54] However, because the disqualification is based on Rule 3.7, they

---

[51] *Droste v. Julien*, 477 F.3d 1030, 1035 (8th Cir. 2007) (internal quotation marks and citation omitted).
[52] *CEF Funding v. Sher Garner*, Civil Action No. 09-6623, 2010 WL 2773116, *2 (E.D. La. Jul. 9, 2010).
[53] *Droste*, 477 F.3d at 1035-36 (citation omitted).
[54] *World Youth Day, Inc. v. Famous Artists*, 866 F. Supp. 1297, 1304 (D. Colo. 1994) ("Realistically, the testimony from oral depositions in this case cannot easily be taken and read into evidence without revealing Zalon's identity as the deposing attorney. Indeed, Zalon himself probably will be deposed. Moreover, it is naive to believe that depositions are divorced from trial advocacy. Depositions are routinely utilized at trial for impeachment, and to present testimony

may participate in all other pretrial litigation activities such as strategy sessions, pretrial hearings, mediation conferences, motion practice, written discovery, and deposition preparation.

Additionally, the Court finds that Mount, Medo, and Brisbi's interests are otherwise aligned with those of their client, and so there is no risk that they will be conflicted in their representation. Just as it is in the interest of FFIC to show that the billing for the underlying cases may have been too high, it is in the interest of both the Deutsch lawyers and AMEC to disprove that argument. Accordingly, the Court amends its prior Ruling[55] to state the following: "While Mount, Medo, and Brisbi are disqualified from appearing as advocates for AMEC at trial, they are not disqualified from acting as advocates in pretrial proceedings except that they may not take nor may they defend any depositions from this point forward."

## VI. CONCLUSION

For the foregoing reasons, AMEC's Motion for Clarification (Doc. 154) is **GRANTED** and FFIC's Motion for Reconsideration (Doc. 156) is **DENIED**.

Signed in Baton Rouge, Louisiana, on August 21, 2017.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

in lieu of live testimony when the witness is unavailable. The skill of deposing counsel on direct and cross-examination is necessarily woven into the fabric of the trial itself. Videotaped depositions present an even greater concern. Unlike oral depositions, if these depositions are used at trial in video format, Zalon's impermissible dual role as advocate and witness will be even more apparent to the jury. I conclude WYD could suffer prejudice and the trial tainted by jury confusion if Zalon is allowed take or defend depositions in this case. *See, e.g.*, *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704, 716 (6th Cir.1982) (upholding the disqualification of the attorney/witness from pretrial depositions, among other activities, under Rule 3.7's predecessor)."). To the extent Mount, Brisbi, and Medo have already taken depositions in this matter, the Court will address those problems as necessary.
[55] Doc. 148.